**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IMAN MOMENI,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARCO RUBIO, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 26-738 (JEB)** |

**MEMORANDUM OPINION**

Plaintiff Iman Momeni, who lives in Sweden, applied for a B1/B2 nonimmigrant visa to travel to the United States with his spouse to celebrate the Iranian New Year in Los Angeles. His application, however, has remained in administrative processing in the U.S. Consulate in Copenhagen for more than two years. After multiple inquiries to the Consulate, including one from the office of a member of Congress, Momeni petitioned this Court. He seeks relief under the Administrative Procedure Act for agency action that has been unreasonably delayed, as well as a writ of mandamus. Defendants have now moved to dismiss. The Court will grant that motion.

## I. Background

### A. Legal Background

Anyone who seeks a nonimmigrant visa to enter the United States must first pay a fee and submit an application. See U.S. Dep't of State, 9 Foreign Affairs Manual § 403.2-3(a) (2026). He must then visit an overseas U.S. consulate for an in-person interview. Id., § 403.5-2. The applicant bears the burden of proving that he is eligible for the visa he seeks. See 8 U.S.C. § 1361. Unless his country is subject to visa sanctions, "[w]hen a visa application has been

properly completed and executed . . . , the consular officer must" either "issue the visa" or "refuse" it. 22 C.F.R. § 41.121(a); see also 9 Foreign Affairs Manual § 403.7-3.

Section 221(g) of the Immigration and Nationality Act directs consular officers to deny a visa if "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that [an] alien is ineligible to receive" one. See 8 U.S.C. § 1201(g). The process, however, does not necessarily end when an application is first refused. The initial application and interview might not convince the consular officer that the applicant is eligible for a visa, but further evidence might. If the consular officer finds that the applicant has fallen short of his burden but that further information may help her make the determination, then she can place the visa into so-called administrative processing — during which the officer seeks out and reviews more evidence. Administrative Processing Information, U.S. Dep't of State, https://perma.cc/NK8K-9U8H. The applicant, meanwhile, must wait.

Neither Congress nor any regulations say how long administrative processing may take. Still, because the State Department is subject to the APA, its officers cannot sit on an application forever; they must "conclude a matter presented to" them "within a reasonable time." 5 U.S.C. § 555(b). In this case, Plaintiff alleges that the time that he has waited amounts to a delay that violates this duty.

B. Factual Background

Plaintiff is a dual Iranian and Swedish citizen currently living in Sweden. See ECF No. 1 (Compl.), ¶ 3. He and his spouse (also a Swedish citizen) applied for a B1/B2 tourist visa for a "planned vacation, specifically for the occasion of the Iranian New Year (Nowruz)." ECF No. 10-1, Exh. D (Embassy Corr. Mar. 8, 2024). When a foreign national seeks to enter the country for temporary business or tourism, two steps are needed. First, the individual must file a Form

DS-160. Visitor Visa, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html. Then, the consular officer may require an interview, which is generally scheduled at the U.S. Embassy or Consulate where the applicant is present. Id. At the visa interview, the consular officer may approve the visa, deny the visa, or determine that the application requires administrative processing. Id.

Momeni and his spouse followed these steps with care. First, they filed a B1/B2 application and then later attended an interview on January 17, 2024. See Compl., ¶ 5. At the conclusion of the interview, the consular officer asked them to submit additional documentation. Id., ¶ 6. For Momeni, this included a *curriculum vitae* and an English translation of his Iranian military-service-exemption card, which he promptly did within five days. Id., ¶¶ 6–7. For his spouse, the rest of the application proceeded smoothly; she received her visa less than a month after the interview. Id., ¶ 8. Momeni's visa, however, hit a bump in the road: his application was placed in administrative processing. Id.

Momeni has repeatedly asked the U.S. Embassy in Copenhagen for updates and has repeatedly been told that the embassy does not know how long administrative processing will take and that it will contact him when there is an update. See ECF No. 10-1, Exhs. D–G (Embassy Corrs.). Plaintiff then filed this suit asking this Court to order Defendants — Secretary of State Marco Rubio, former Attorney General Pam Bondi, the Department of State, and the Consular Office of the U.S. Embassy in Copenhagen — to "complete the [visa] adjudication within a reasonable time." Compl., ¶ 18. He seeks a declaratory judgment that "Defendants' delay is unreasonable under the Administrative Procedure Act" as well as a writ of mandamus "compelling Defendants to adjudicate Plaintiff's B1/B2 nonimmigrant visa

application within a reasonable time." Compl. at 3. Defendants have moved to dismiss. See ECF No. 7 (MTD).

## II. Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See MTD at 1. When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)). The court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III. Analysis

The Court first considers whether it may hear Momeni's suit. Finding that it can, it then assesses the merits — starting with his claim under the APA, then turning to his petition for a writ of mandamus.

### A. Consular Nonreviewability

Defendants argue that the Complaint should be dismissed because, in its view, this Court's review is barred by the doctrine of consular nonreviewability. See MTD at 9–13. They advance the same arguments that the Government put forth in Dib v. Shea, 2026 WL 1578859, at *3 (D.D.C. June 2, 2026) — specifically, that per the D.C. Circuit's unpublished opinion in Karimova v. Abate, 2024 WL 3517852 (D.C. Cir. July 24, 2024), a decision to place a visa into administrative processing is a final decision to which consular nonreviewability applies. See MTD at 11–13. For the same reasons that this Court rejected those arguments in Dib mere months ago, it will reject them here, too. See 2026 WL 1578859, at *4. It may therefore proceed to the merits.

### B. APA Claim

The Court first assesses Momeni's claim under § 706(1) of the APA to "compel agency action" — here, the finishing of administrative processing — that has been "unreasonably delayed." 5 U.S.C. § 706(1). "To state a claim for unreasonable delay, [p]laintiffs must" plausibly allege two elements: (1) "that the agency failed to take a discrete agency action that it is required to take," and (2) "that the delay was unreasonable." Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (quotation marks and citation omitted). Momeni's claim here is clearly based on a discrete agency action: the decision to accept or reject his B1/B2 visa application. Khazaei v. Blinken, 2023 WL 6065095, at *6 (D.D.C. Sept. 18,

2023). As in Dib, however, the Court need not determine whether this is action that Defendants are required to take. Even if it is, the Court finds that any delay is not unreasonable.

Courts examine the reasonableness of a particular delay using the six factors from Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (cleaned up). The Court considers these factors with respect to Momeni's visa application, ultimately concluding that the delay is not unreasonable.

1. *Factors (1) and (2)*

Start with whether Defendants' timeline has been governed by a rule of reason and whether Congress has provided any guidance. These questions are interconnected, so courts "typically consider the first and second factors together." Nusrat v. Blinken, 2022 WL 4103860, at *6 (D.D.C. Sept. 8, 2022). The Court will do the same here.

These factors ask how long the agency has delayed and why. Afghan & Iraqi Allies v. Blinken, 103 F.4th 807, 816 (D.C. Cir. 2024). While the length of time is certainly relevant, it is not dispositive. Other considerations include "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency," Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003) — in

other words, whether there is "any rhyme or reason" for the agency's delay. Ctr. for Sci. in the Pub. Int. v. U.S. FDA, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Momeni, however, has not made any allegations that go to the reasons for the agency's delay or its capacity to move faster. Instead, the only relevant allegations in his Complaint are about how long he has waited. See Compl., ¶ 13. As such, taking his lead, the Court will assess only whether the length of time he has waited is unreasonable.

As Plaintiff concedes, Congress has not set a deadline for the agency to process nonimmigrant visas. See Opp. at 13. Still, Momeni contends that "Congress has spoken through the APA" to "require[] agencies to conclude matters presented to them within a reasonable time." Id. Unfortunately for Plaintiff, this provision of the APA does not impose a congressionally imposed timeline for adjudication of his visa. See Crowe v. Federal Bureau of Prisons, 2025 WL 1635392, at *17 (D.D.C. June 9, 2025) (describing "the admonition in the APA that agencies conclude matters presented to them 'within a reasonable time'" as "general timing provision").

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" for how much time is reasonable. Sarlak v. Pompeo, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). That caselaw typically has found delays in the two-to-three-year range not unreasonable. See, e.g., Didban, 435 F. Supp. 3d at 176–77 (with delay of two years, first two factors "strongly favor the Government"); Sarlak, 2020 WL 3082018, at *5 (same); Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (two-year delay "does not typically require judicial intervention"); Bagherian v. Pompeo, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (25-month delay reasonable); Mahmood v. U.S. Dep't of Homeland Sec., 2021 WL 5998385, at *7–8 (D.D.C. Dec. 20, 2021) (same); Janay v. Blinken, 743 F. Supp. 3d 96, 115 (D.D.C. 2024) (26-month delay "well within" reasonable timeline) (quotation marks omitted); Dastagir v. Blinken, 557 F. Supp. 3d 160, 165

(D.D.C. 2021) (29-month delay reasonable); Akrayi v. U.S. Dep't of State, 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023) (delay of "almost three years . . . falls comfortably within the range of reasonableness"); Isse v. Whitman, 2023 WL 4174357 (D.D.C. June 26, 2023) (40-month delay reasonable).

Plaintiff's wait does not approach those benchmarks. He says that he was told that his application had been put in administrative processing on February 14, 2024. See Compl., ¶ 8. Courts in this district divide over whether agency delays should be measured up to the date when the plaintiff sued or up to the date when the court issues its opinion. Compare, e.g., Barazandeh v. U.S. Dep't of State, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay . . . is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint."), with, e.g., Brzezinski v. U.S. Dep't of Homeland Sec., 2021 WL 4191958, at *4 n.3 (D.D.C. Sept. 15, 2021) ("[C]ases seem to focus on the delay up to the issuance of the opinion."). Even measuring time up until today, Plaintiff has been stuck in administrative processing for 30 months — within the time that courts hold is reasonable as a matter of law.

To be sure, the Court is cognizant of how hard it is for a plaintiff to allege facts beyond the length of the delay before he has gotten discovery. Yet many plaintiffs can overcome that hurdle, as some delays are so long that their duration alone is enough to carry the day on these two factors. Asadi v. U.S. Dep't of State, 2024 WL 3835409, at *7 (D.D.C. Aug. 15, 2024) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable.") (quotation marks omitted). At this juncture, however, Momeni's wait falls short. The first two factors thus favor Defendants.

2. *Factors (3) and (5)*

Factors (3) and (5) — whether human health and welfare are at stake and the interests prejudiced by delay — overlap, so courts typically consider them together. Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); Sivananthan v. Blinken, 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023). Although his Complaint is sparse on details, Plaintiff contends that the delay has "imposed prolonged uncertainty and prevented Plaintiff from making meaningful travel plans." Opp. at 14. This experience has caused "stress and frustration," which, in Momeni's telling, "involve[s] far more than mere inconvenience." Id. The Court does not doubt that his inability to take "a highly anticipated trip to California . . . to celebrate Persian New Year" with "business-class flights, a premium hotel stay in Las Vegas, and a traditional convertible Ford Mustang" may be frustrating. See Opp., Exh. F (Embassy Corr. Nov. 12, 2024). Uncertainty in making vacation plans, however, is not by itself sufficient to weigh in favor of Plaintiff as to these two factors, especially where he does not allege harms to his health or employment or ability to remain in the United States. See Jain v. Jaddou, 2023 WL 2769094, at *8 (N.D. Cal. Mar. 31, 2023) (concluding that third and fifth factors weigh against plaintiffs where "plaintiffs' supporting declarations largely describe economic and lifestyle interests that are adversely affected by USCIS's delay") (quotation marks and citation omitted); Desai v. U.S. Citizenship and Immigration Services, 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021) (finding plaintiffs' interest in supervising investment in United States not significant as to these factors). Nor does his Complaint allege separation from his spouse or other loved ones, see Compl., ¶¶ 5–15; Opp. at 15–16, which other courts have recognized is an "undeniably significant" interest in these cases. Didban, 435 F. Supp. 3d at 177. Factors (3) and (5) therefore favor Defendants.

3. *Factor (4)*

The fourth factor — "the effect of expediting delayed action on" other agency priorities, TRAC, 750 F.2d at 80 — also cuts heavily against Plaintiff. If a line of applicants is waiting for a decision and "putting [Plaintiff] at the head of the queue simply moves all others back one space and produces no net gain," then that fact by itself usually precludes relief. In re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991); Mashpee Wampanoag Tribal Council, 336 F.3d at 1100 (characterizing Barr Laboratories as so holding); see also Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 192 (D.C. Cir. 2016) (that fact alone "forecloses" relief); In re Pub. Emps. for Env't Resp., 957 F.3d 267, 275 (D.C. Cir. 2020) (explaining that Circuit "will not" grant relief in such case).

Reshuffling the queue would not reduce total wait time. It would, moreover, strip the expert agency of its discretion to prioritize certain cases. See Barr Lab'ys, 930 F.2d at 76 ("The agency is in a unique — and authoritative — position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."). As in Dib, this Court declines to do so — especially when that would thwart Congress's choice to "give[] the agencies wide discretion in the area of immigration processing." 2026 WL 1578859, at *7 (quoting Skalka, 246 F. Supp. 3d at 153–54). This factor favors Defendants.

4. *Factor (6)*

The last factor notes that courts can still find that agency action was unreasonably delayed even if no "impropriety lurk[s] behind" the delay. TRAC, 750 F.2d at 80 (quoting Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA, 740 F.2d 21, 34 (D.C. Cir. 1984)). Without impropriety, however, this factor is neutral. Da Costa, 80 F.4th at 345–46. Plaintiff does not allege that Defendants have acted improperly, so this factor favors neither side. See Opp. at 16.

* * *

Viewing the factors together, all but one weighs against relief. Even if factors (3) and (5) were to favor relief — which they do not in this case — factors (1), (2), and (4) cut strongly against Plaintiff, which weighs heavily in this analysis. While the Court recognizes that Plaintiff's inability to make travel arrangements may be irritating, the length of delay is reasonable as a matter of law, and allowing Momeni to cut in line would simply push others back. The Court must therefore deny relief under the APA.

C. Mandamus

As to Momeni's petition for a writ of mandamus, the D.C. Circuit has given two sets of instructions on how courts should analyze such petitions. The first involves a two-prong inquiry that contains both a jurisdictional prong and a merits prong. In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005). The second directs courts to apply the TRAC factors to determine whether mandamus is appropriate. Am. Hosp. Ass'n, 812 F.3d at 189; In re Bluewater Network, 234 F.3d 1305, 1315 (D.C. Cir. 2000); In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008); In re People's Mojahedin Org. of Iran, 680 F.3d 832, 836–37 (D.C. Cir. 2012). Once again following its approach in Dib, this Court declines to take up the question of how the TRAC factors map on to the general mandamus test, since it does not change the outcome in Momeni's case.

Courts can assume statutory jurisdiction to reject a claim on the merits. E.g., Abdellatif v. U.S. Dep't of Homeland Sec., 109 F.4th 562, 569 (D.C. Cir. 2024). Indeed, when a question of statutory jurisdiction is hard but "relief will unquestionably be denied" on the merits, Young v. EPA, 106 F.4th 56, 61 n.5 (D.C. Cir. 2024) (emphasis omitted), the Circuit often prefers to dispose of the claim on the easy merits grounds and thereby "avoid a doubtful issue of statutory

jurisdiction." Kramer v. Gates, 481 F.3d 788, 791 (D.C. Cir. 2007) (emphasis omitted). The Court will follow that course here. For the reasons provided above, Plaintiff cannot overcome the TRAC factors. Whichever formal prong the TRAC factors map onto, therefore, the Court will presume subject-matter jurisdiction under the Mandamus Act and reject Plaintiff's petition on the merits. Cf. Rashidian v. Garland, 2024 WL 1076810, at *5 & n.5 (D.D.C. Mar. 8, 2024) (taking this approach).

## IV. Conclusion

While the Court may review the delay that Momeni challenges here, he does not state a claim that such delay is so unreasonable that it merits judicial intervention. The Court will therefore grant Defendants' Motion to Dismiss. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: August 14, 2026